# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MOHAMMAD ABUAWAD,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

No. 15 C 9360

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Mohammad Abuawad filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[1] A person is disabled if he or she is unable to perform

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that

"any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

2

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on February 24, 2012, alleging that he became disabled on January 25, 2011, due to degenerative lumbar disc disease, high blood pressure, diabetes, hypertension, arthritis in both knees, and gout. (R. at 61, 93). The application was denied initially on May 21, 2012, and upon reconsideration on November 2, 2012, after which Plaintiff filed a timely request for a hearing. (*Id.* at 61, 93–100, 103–12, 193). On April 18, 2014, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 7–53, 61). The ALJ also heard testimony from Chukwuemeka Ezike, M.D., a medical expert, and Matthew C. Lampley, a vocational expert (VE). (*Id.*).

The ALJ denied Plaintiff's request for benefits on May 2, 2014. (R. at 61–69). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff did not engage in substantial gainful activity from January 25, 2011, his alleged onset date, through December 31, 2012, his date last insured (DLI).[2] (*Id.* at 63). At step two, the ALJ found that through the DLI, Plaintiff's history of hypertension, diabetes mellitus, gout, history of obesity, lumbar degenerative disc disease, left knee meniscal tear, arthritis, left Achilles tendinopathy, history of right retinal detachment, and history of chronic kidney disease were severe impairments. (*Id.*). At step three, the ALJ determined that through the DLI, Plaintiff did not have

---

[2] The ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2012. (R. at 63). Therefore, Plaintiff must establish that he was disabled between January 25, 2011, and December 31, 2012, in order to qualify for benefits. *Bjornson v. Astrue*, 671 F.3d 640, 641 (7th Cir. 2012) ("only if [claimant] was disabled from full-time work by [her last insured] date is she eligible for benefits").

an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that through the DLI, Plaintiff could perform light work, except

> [she] can lift 20 pounds occasionally and carry 10 pounds frequently and occasionally [ ] sit 6 hours in an 8-hour workday and stand and/or walk 2 hours in an 8 hour workday. [Plaintiff] could never climb ladders, ropes, or scaffolds, and could occasionally climb ramps or stairs, balance, and stoop, crouching, kneeling, and crawling [*sic*]. [Plaintiff] had to avoid concentrated exposure to extreme cold and heat, use of moving machinery, and exposure to unprotected heights. [Plaintiff] was limited to occupations not requiring binocular vision.

(R. at 64). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that through the DLI, Plaintiff was capable of performing past relevant work as a cashier "as actually performed." (*Id.* at 68–69). Accordingly, the ALJ concluded that Plaintiff is not under a disability, as defined by the Act, from the alleged onset date through the DLI.

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in gen-

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

4

eral, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks eviden-

5

tiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Although the ALJ found that Plaintiff has numerous severe impairments including hypertension, diabetes mellitus, gout, obesity, lumbar degenerative disc disease, a left knee meniscal tear, arthritis, left Achilles tendinopathy, right retinal detachment of the right eye and chronic kidney disease (R. at 63), the only pertinent issue on appeal involves his vision impairment (Dkt. 13 at 2).

At the hearing on April 18, 2014, Plaintiff testified that his past relevant work consisted of a job as a taxi driver and as a cashier in a supermarket. (R. at 12–15). Plaintiff testified that as a part time cashier, he had to check in and out customers once they made their purchases. (*Id.* at 12). Plaintiff further testified that he performed the work while sitting in a chair and that he was not required to lift or carry significant weight. (*Id.*). Due to diabetes and glaucoma, he lost vision entirely in his right eye and had poor vision in his left eye. (*Id.* at 15). Additionally, Plaintiff asserted that due to his declining vision, he no longer was able to do the work he had done in the past. (*Id.* at 14). The ALJ did not ask specific questions about the visual requirements of the cashier position.

The ME testified that, as a result of Plaintiff's medical impairments, Plaintiff would be limited to lifting 20 pounds occasionally, 10 pounds frequently; to sitting for six hours in an eight-hour work day; and to standing and walking for two hours in an eight-hour work day with normal breaks. (R. at 39). Additionally, the ME tes-

tified that Plaintiff would be limited to jobs that do not require binocular vision. (R. 40). When questioned by Plaintiff's attorney about the visual impairment, the ME stated that Plaintiff would be unable to perform a job which required the use of both eyes. (R. 43).

The VE testified that Plaintiff's past relevant work consisted of a cashier and a taxi driver. (R. 47). He indicated that the job of cashier has a light exertion level based on the Dictionary of Occupational Titles (DOT); however, based on Plaintiff's testimony, the job of cashier as Plaintiff performed it has a sedentary exertion level. (*Id.*). The ALJ asked the VE if an individual could return to his past relevant work if such an individual was limited to light levels of exertion, was able to stand and walk for only two hours in an eight-hour work day, and was limited to jobs which did not require binocular vision. (R. 48). In response to that hypothetical, the VE testified that while all Plaintiff's past work as generally performed would be precluded, the job of cashier as performed by Plaintiff would not be precluded. (*Id.*). When questioned by Plaintiffs attorney, the VE indicated that Plaintiff would be unable to perform the cashiering job as he performed it if he was only occasionally able to read fine print with near acuity. (R. 50).

## V. DISCUSSION

Plaintiff raises only one argument in support of his request for reversal. He asserts that the ALJ violated SSR 82-61 in concluding that Plaintiff could return to his past relevant work. (Dkt. 13 at 4).

7

There are three possible tests for determining whether or not a plaintiff retains the capacity to perform his or her past relevant work. Social Security Ruling (SSR) 82-61.[4] The relevant test in this case is: "Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it." *Id.* at *1. "The RFC to meet the physical and mental demands of jobs a claimant has performed in the past . . . *is generally* a sufficient basis for a finding of 'not disabled.'" SSR 82-62, at *3 (emphasis added). However, "[s]ufficient documentation [must] be obtained to support the decision," including, "factual information about those work demands which have a bearing on the medially established limitations." *Id.*

It is the ALJ's responsibility to determine whether a claimant can perform his past relevant work after considering and weighing all of the evidence. The Seventh Circuit has recognized that even though a claimant has the burden of proof to show he cannot perform his past relevant work, "the ALJ still must make factual findings that support his conclusion." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). "To determine if a claimant is capable of performing his or her past relevant work, an ALJ must compare the demands of the claimant's past occupation with his or her present capacity." *Steward v. Bowen*, 858 F.2d 1295, 1299–300 (7th Cir. 1988). The

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

8

Seventh Circuit has emphasized that the ALJ "must specify the duties involved in a prior job and assess the [plaintiff's] ability to perform the specific tasks." *Nolen v. Sullivan*, 939 F.2d 516, 518–19 (7th Cir. 1991)

Here, the ALJ should have considered at step four whether Plaintiff could return to his past relevant work, despite the limitations in his vision. The ALJ posed to the VE a hypothetical which incorporated all of the Plaintiff's RFC limitations, including "occupations that did not require binocular vision." (R. at 47–48, 64). The VE testified that such an individual could perform Plaintiff's past work as a cashier, "as performed by [Plaintiff]" (*Id.* at 48). Plaintiff argues that the ALJ erred when he failed to elicit testimony or discuss in his opinion the specific vision requirements of the job of cashier as it was actually performed, thus violating SSR 82-61. (Dkt. 13 at 4-5). The Court agrees.

The ALJ's decision does not list the specific vision demands involved in Plaintiff's job as cashier. The ALJ classified Plaintiff's past relevant work as a cashier as "unskilled with a SVP (specific vocational preparation) of 2, and as light exertional work as classified by the Dictionary of Occupational Titles but sedentary exertional work as actually performed because he testified that the sat and did not do any lifting." (R. at 68). While the ALJ elicited testimony at the hearing about the work demands of a cashier that had a bearing on Plaintiff's ability to stand, lift or carry significant weight (*id.* at 12), he did not ask about specific work demands that related to Plaintiff's ability to see. This falls short of the Seventh Circuit's requirements for facts describing Plaintiff's previous duties and an assessment of Plaintiff's abil-

9

ity to perform them. *Nolen,* 939 F.2d at 519; *see Smith v. Barnhart*, 388 F.3d 251, 552-53 (7thCir. 2004) (finding that an ALJ may not conclude that a plaintiff can perform sedentary jobs generally without considering whether a plaintiff could perform the duties of the specific jobs that she had held). Thus, the ALJ's decision did not contain sufficient "factual information about those work demands which have a bearing on the medially established limitations," specifically, visual impairments. SSR 82-62, at *3.

The Commissioner argues that because Plaintiff did not contest the ALJ's RFC, he cannot now argue that Plaintiff has greater limitations than indicated in the RFC. (Dkt. 18 at 6). However, Plaintiff is not arguing that greater limitations should have been incorporated into the RFC; rather, Plaintiff contends that the ALJ should have identified the specific vision demands relating to Plaintiff's past work as a cashier. While having the RFC to meet the demands of past work is "a generally sufficient basis" for a finding of not disabled, (SSR 82-62), in this case, the ALJ also was required to ask for or discuss specific job demands as Plaintiff actually performed them regarding vision requirements. *See Nolen,* 939 F.2d at 519; *Smith*, 388 F.3d at 552-53; SSR 82-62. The ALJ did not do so. This oversight is particularly important because the ALJ's determination that Plaintiff was not disabled hinges solely on Plaintiff's ability to perform the work of a cashier as it was actually performed; the ALJ did not conduct a step five analysis to determine if there were other jobs in the national economy that the Plaintiff could have performed.

10

Based on the evidence of record, the Court concludes that the ALJ erred in determining Plaintiff could perform his past work as a cashier. The matter is remanded for the ALJ to determine the specific vision demands of Plaintiff's past job as cashier and, based on the evidence available, his ability to meet those demands. If the Plaintiff is found to be unable to perform his past work as a cashier, the ALJ should proceed to a step-five analysis to determine if there are other jobs that exist in significant numbers in the national economy that Plaintiff could have performed. *See* 20 C.F.R. § 404.1520(g).

## VI. CONCLUSION

For the reason's stated above, Plaintiff's Motion for Summary Judgment [12] is **GRANTED**. Defendant's Motion for Summary Judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 19, 2017

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States Magistrate Judge